1  Rhonda R. Trotter (SBN 169241)
    Rhonda.Trotter@arnoldporter.com
2  Cassandra E. Havens (SBN 317241)
    Cassandra.Havens@arnoldporter.com
3  **Arnold & Porter Kaye Scholer LLP**
   777 South Figueroa Street, 44th Floor
4  Los Angeles, CA 90017-5844
   Telephone: (213) 243-4000
5  Facsimile: (213) 243-4199

6  Christopher J. Renk (*pro hac vice* to be filed)
    Chris.Renk@arnoldporter.com
7  Michael J. Harris (*pro hac vice* to be filed)
    Michael.Harris@arnoldporter.com
8  **Arnold & Porter Kaye Scholer LLP**
   70 West Madison Street, Suite 4200
9  Chicago, IL 60602-4231
   Telephone: (312) 583-2300
10 Facsimile: (312) 583-2360

11 *Attorneys for Plaintiff Nike, Inc.*
   *[Additional Counsel Listed on Signature Page]*
12

13           **UNITED STATES DISTRICT COURT**

14           **CENTRAL DISTRICT OF CALIFORNIA**

15

16                                             Case No. 2:20-cv-09431

17                                             **FIRST AMENDED**
                                               **COMPLAINT FOR:**
18 NIKE, INC.,
                                               **(1) Trademark Infringement in**
19              Plaintiff,                          **Violation of 15 U.S.C. § 1114**
                                               **(2) False Designation of Origin /**
20       v.                                        **Unfair Competition in Violation**
                                                   **of 15 U.S.C. § 1125(a)**
21 WARREN LOTAS                                 **(3) Trademark Dilution in Violation**
                                                   **of 15 U.S.C. § 1125(c)**
22       and                                    **(4) Unfair Competition in Violation**
                                                   **of Cal. Bus. & Prof. Code §§**
23 WARREN LOTAS, LLC,                              **17200, *et seq.***
                                               **(5) Common Law Trademark**
24              Defendants.                         **Infringement and Unfair**
                                                   **Competition**
25

26

27

28                                             **JURY TRIAL REQUESTED**

                    FIRST AMENDED COMPLAINT

Plaintiff Nike, Inc. ("Nike") for its First Amended Complaint against Defendants Warren Lotas and Warren Lotas, LLC (collectively, "WL") alleges as follows:

## PRELIMINARY STATEMENT

1.    Launched over 30 years ago, the Nike Dunk is now recognized as one of the most iconic and influential sneakers of all time.

2.    Today, Nike Dunks—especially limited-edition collaborations—are coveted by sneakerheads throughout the world. For example, the 2005 limited-edition Nike SB Dunk Low NYC Pigeon pictured below currently sells for tens-of-thousands of dollars in the secondary sneaker market.



3.    This prized Dunk embodies the DNA of sneaker culture—it is original, authentic, and creative. Nike embraces those qualities. As such, Nike protects its iconic sneaker designs, and its intellectual property in those designs, by rooting-out bad actors that undermine the DNA of sneaker culture by promoting and selling fakes.

4.    Warren Lotas is one of those bad actors. He is currently promoting and selling fakes of coveted Nike Dunks. The table below shows examples of his fakes next to genuine Nike Dunks.

| Genuine Nike Dunks | Warren Lotas Fakes |
| --- | --- |
| Nike SB Dunk Low NYC Pigeon | Warren Lotas X Staple Pigeon OG |

FIRST AMENDED COMPLAINT

| Genuine Nike Dunks | Warren Lotas Fakes |
|---|---|
|  |  |
| Stussy X Nike SB Dunk Low "Cherry" | Warren Lotas Freddy Broccolini Chanclas |
|  |  |
| Nike SB Dunk Low Classic Green/Black/White/Red | Warren Lotas Toxic Green |

5.     Warren Lotas only recently announced these sneakers, but there is already confusion in the marketplace regarding whether they are legitimate customizations or illegal fakes. Warren Lotas intentionally created the confusion, and he is attempting to capitalize on it, by, among other things, using Nike's registered DUNK word mark, using Nike's registered Dunk trade dress, using a mark that is confusingly similar to Nike's famous Swoosh design, and, on information and belief, using photoshopped or digitally altered images of authentic Nike Dunks to promote his fakes.

6.     Nike files this lawsuit to protect its intellectual property and to clear the confusion in the marketplace by setting the record straight—not a single component of Warren Lotas's fake sneakers comes from an original Nike Dunk. Warren Lotas's "Dunk" sneakers are not legitimate customizations, they are illegal fakes.

### THE PARTIES

7.     Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

8.     On information and belief, Warren Lotas is an individual residing in Los Angeles, California.

FIRST AMENDED COMPLAINT

9.     Warren Lotas, LLC is a limited liability company organized under the laws of the State of California with a principal place of business at 1700 South Santa Fe Avenue, Suite 320, Los Angeles, California 90021.

10.    On information and belief, Warren Lotas is a founding member and the CEO of Warren Lotas, LLC.

## JURISDICTION AND VENUE

11.    This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, *et seq.*, and under statutory and common law of unfair competition. This Court has subject matter jurisdiction at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

12.    On information and belief, this Court may exercise personal jurisdiction over WL at least because WL resides in this District, WL's principal place of business is located within this District, WL does business in this District, and WL has committed acts of infringement at issue in this Complaint in this District.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because WL resides in this District, WL's principal place of business is in this District, WL does business in this District, WL is subject to personal jurisdiction in this District, and WL has committed acts of infringement at issue in this Complaint in this District.

## FACTUAL BACKGROUND

**A.   NIKE**

14.    Nike's principal business activity is the design, development and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories and services.

15.    Nike is the largest seller of athletic footwear and apparel in the world.

16.    Nike sells its products directly to consumers through Nike-owned retail stores and digital platforms, and to retail accounts and a mix of independent

- 4 -

distributors, licensees and sales representatives in virtually all countries around the world.

17.   Nike uses trademarks on nearly all of its products.

18.   Having distinctive trademarks that are readily identifiable is an important factor in creating a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.

19.   As a result of continuous and long-standing promotion, substantial sales, and consumer recognition, Nike has developed powerful trademarks rights.

**B.   NIKE'S SWOOSH DESIGN MARK**

20.   One of Nike's most iconic assets is the Swoosh design  .

21.   The U.S. Court of Appeals for the Ninth Circuit has referenced the Swoosh design as an example of a "famous trademark [that has] assumed an exalted status...Consumers sometimes buy products bearing marks such as the Nike Swoosh…for the appeal of the mark itself, without regard to whether it signifies the origin or sponsorship of the product." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006).

22.   Nike has continuously promoted and sold products bearing the Swoosh design since 1971, including in connection with dozens of iconic products.

23.   Nike has used, and continues to use, the Swoosh design on almost all of its products, and in connection with its retail sales of those products.

24.   Nike has also promoted and sold products bearing the Swoosh design in various orientations and placements.

25.   Nike has sold billions of products bearing the Swoosh design in the United States, accounting for hundreds of billions of dollars in revenue.

26.   Nike has spent tens of billions of dollars promoting Swoosh design branded products in the United States.

FIRST AMENDED COMPLAINT

27.   Nike advertises and promotes products bearing the Swoosh design through a wide variety of traditional and non-traditional means, including print advertising, event sponsorship, and athlete and team endorsements, to name a few.

28.   Nike also provides the official uniforms of the National Football League, the National Basketball League ("NBA"), and Major League Baseball, all of which prominently bear the Swoosh design.

29.   As a result of Nike's promotional and sales efforts over the past nearly fifty years, the Swoosh design is one of the most famous, recognizable, and valuable trademarks in the world.

30.   The Swoosh design has received unsolicited publicity and praise among consumers and in the media.

31.   The Swoosh design has received judicial and administrative recognition as a famous, recognizable, and valuable trademark.

32.   Nike has registered the Swoosh design on the Principal Register of the U.S. Patent and Trademark Office in connection with a wide array of goods and services. Relevant to this action, Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 977,190 |  | Jan. 22, 1974 | Athletic shoes with or without spikes | 1 |
| 1,284,385 |  | Jul. 3, 1984 | Athletic and casual clothing | 2 |
| 1,323,342 |  | Mar. 5, 1985 | Footwear | 3 |
| 1,323,343 |  | Mar. 5, 1985 | Footwear | 4 |
| 1,990,180 |  | Jul. 30, 1996 | Full line of sports clothing | 5 |

FIRST AMENDED COMPLAINT

33.   Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration Nos. 977,190, 1,284,385, 1,323,342, 1,323,343, and 1,990,180 are incontestable and constitute conclusive evidence of the validity of the Swoosh design mark, Nike's ownership of the Swoosh design mark, and Nike's exclusive right to use the Swoosh design mark.

## C.   NIKE'S DUNK WORD MARK AND DUNK TRADE DRESS

34.   The Nike Dunk sneaker began as a basketball sneaker in the 1980s.

35.   Nike introduced the Dunk sneaker in 1986 in connection with its College Colors Program. College basketball players had typically worn single color shoes (e.g., white or black). But Nike's College Colors Program offered schools the opportunity to have shoes that mirrored their school colors. Nike's original "Be True to Your School" advertisement for its College Colors Program is reproduced below.



FIRST AMENDED COMPLAINT

36.    Nike's College Colors Program became wildly popular. At that time in the 1980s, college basketball was reaching new heights among a wide age range of athletes and fans. From east to west, rivalries were strong and network TV brought college hoops, and Nike's Dunk sneakers, to the masses.

37.    The Dunk's adoption and popularity eventually spread beyond basketball culture as the skateboard community organically adopted the Dunk making it a skate icon by the 2000s. From there, the Dunk crossed over sports and fashion, and today it is recognized as one of the most iconic and influential sneakers of all time.

38.    Nike drove the iconic status the Dunk enjoys today, in part, through limited-edition collaborations with designers, artists, and other creatives. For example, in 2005, Nike collaborated with Jeff Staple, Founder and Creative Director of Staple Design and Reed Space, to create the limited-edition Nike SB Dunk Low NYC Pigeon.

39.    Nike released 150 pairs of the Nike SB Dunk Low NYC Pigeon at Reed Space's New York storefront. A large crowd camped-out hoping to get a pair, the New York City Police were called, and the release made the cover of the New York Post. The event paved the way for today's sneaker culture that includes resellers, post-sale customizations, and dedicated secondary markets. In fact, the Nike SB Dunk Low NYC Pigeon has been referred to as the "sneaker that started it all," ultimately declaring the birth of sneaker culture.

40.    Since the launch of the Dunks in 1986, Nike has continuously and substantially exclusively used the DUNK word mark and promoted and sold sneakers bearing the Dunk trade dress.

41.    Nike has sold many tens of millions of Dunks in the United States, accounting for hundreds of millions of dollars in revenue.

42.    Nike has also registered the DUNK word mark and the Dunk trade dress on the Principal Register of the U.S. Patent and Trademark Office. Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

FIRST AMENDED COMPLAINT

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|----------|-----------|-----------|-------|------------|
| 3,780,236 | DUNK | Apr. 27, 2010 | Footwear | 6 |
| 3,711,305 |  | Nov. 17, 2009 | Footwear | 7 |
| 3,721,064 |  | Dec. 8, 2009 | Footwear | 8 |

43.    Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration Nos. 3,780,236, 3,711,305, and 3,721,054 are incontestable and constitute conclusive evidence of the validity of the DUNK word mark and the Dunk trade dress, Nike's ownership of the DUNK word mark and the Dunk trade dress, and Nike's exclusive right to use the DUNK word mark and the Dunk trade dress.

**D.  NIKE MAINTAINS STRICT CONTROL OVER ITS TRADEMARKS AND NIKE'S RELATED BUSINESS REPUTATION AND GOODWILL**

44.    Nike's Swoosh design mark, DUNK word mark, and Dunk trade dress are collectively referred to in this Complaint as the "Asserted Marks."

45.    Nike maintains strict quality control standards for its products bearing the Asserted Marks. Genuine Nike products bearing the Asserted Marks are inspected and approved by Nike prior to distribution and sale.

46.    Nike also maintains strict control over the use of the Asserted Marks in connection with its products so that Nike can maintain control over its related business reputation and goodwill. Nike, for example, carefully determines how many products bearing the Asserted Marks are released, where the products are released, when the products are released, and how the products are released.

**E.  WL'S UNLAWFUL ACTIVITIES**

47.    WL has attempted to capitalize on the strength and fame of Nike and its Asserted Marks by making, promoting, advertising, marketing, and selling in the

- 9 -

FIRST AMENDED COMPLAINT

United States footwear and apparel bearing the Asserted Marks and/or confusingly similar marks (the "Infringing Products").

48.   WL's Infringing Products include at least products WL refers to as the Warren Lotas X Staple Pigeon OG, the Warren Lotas Freddy Broccolini Chanclas, the Warren Lotas Toxic Green, the Warren Lotas Jason Voorhees Dunk Low, and any other footwear or apparel products that bear the Asserted Marks and/or confusingly similar marks. Examples of Infringing Products are pictured below next to the Asserted Marks and genuine Nike products bearing the Asserted Marks.

| Asserted Marks | Genuine Dunks | Infringing Products |
|----------------|---------------|---------------------|
|  |  |  |

FIRST AMENDED COMPLAINT

49.   WL also promotes and sells Infringing Products using the DUNK word mark, including by calling its fakes "DUNKS" in promotional videos and using the DUNK word mark on product packaging for Infringing Products.

50.   On information and belief, WL promotes and sells Infringing Products on its website at <http://warrenlotas.com> and on a variety of social media accounts, including Facebook, Instagram, and Twitter.

51.   On about September 27, 2020, WL announced the Warren Lotas x Staple Pigeon Infringing Product on its Instagram account. As shown below, WL took pre-orders for 15 minutes and indicated it will fulfill orders in 3-4 months. WL stated: "[w]e want this shoe to be accessible to EVERYONE.  EVERYONE THAT WANTS A PAIR WILL GET A PAIR."



52.   WL also recently announced that the Warren Lotas Freddy Broccolini Chanclas Infringing Product will not ship until December 2020:



- 11 -

FIRST AMENDED COMPLAINT

53.    WL's Infringing Products are not genuine Nike products. Nike did not manufacture or inspect the Infringing Products or any component of the Infringing Products, and it did not authorize WL to make, promote, advertise, market, or sell the Infringing Products.

54.    WL's Infringing Products travel in the identical channels of trades and are sold to identical consumers as Nike's genuine products.

55.    WL has taken systematic steps in an attempt to falsely associate its Infringing Products with Nike. WL has attempted to capitalize on Nike's valuable reputation and customer goodwill by using the Asserted Marks and/or confusingly similar marks in a manner that is likely to cause consumers and potential customers to believe that WL's Infringing Products are associated with Nike, when they are not.

56.    WL has intentionally created confusion in the marketplace by, among other things, using Nike's DUNK word mark, using Nike's Dunk trade dress, using a mark that is confusingly similar to Nike's famous Swoosh design, and, on information and belief, using digitally altered images of authentic Nike Dunks to promote Infringing Products. For example, at least one purchaser has noticed, and commented on www.reddit.com, that WL may be using photoshopped images of authentic Nike Dunks to promote his fakes:



FIRST AMENDED COMPLAINT

57.   Indeed, there is already confusion in the marketplace regarding whether WL's Infringing Products are legitimate customizations or illegal fakes, as evidenced by at least the example consumer commentary below.



58.   Unless stopped, WL's Infringing Products and WL's use of the Asserted Marks will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, and confusion in the secondary sneakers markets.

59.   WL's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of WL's Infringing Products.

60.   WL's actions alleged herein are intended to cause consumers and potential customers to believe that WL's business and products are associated with Nike, when they are not.

61.   By virtue of the acts complained of herein, WL has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and WL's Infringing Products, and has otherwise competed unfairly by

unlawfully trading on and using the Asserted Marks without Nike's permission.

62.   WL's acts complained of herein are willful and deliberate.

63.   WL's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless WL is preliminarily and permanently enjoined from its wrongful acts.

64.   WL's acts complained of herein have caused Nike to suffer irreparable injury to its business. Nike will suffer substantial loss of goodwill and reputation unless and until WL is preliminarily and permanently enjoined from the wrongful acts complained of herein.

## COUNT I: TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114

65.   Nike repeats and alleges each and every allegation of paragraphs 1 through 64, above, as though fully set forth herein.

66.   WL has knowingly used and continues to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products WL manufactures, advertises, promotes, and sells in the United States, including the Infringing Products. WL has used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

67.   WL's use of the Asserted Marks (a) constitutes infringement of the Asserted Marks; (b) is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of WL or WL's Infringing Products with Nike or Nike's products; and (c) is likely to cause such people to believe in error that WL's Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that WL is in some way affiliated with Nike.

68.   Nike has no control over the nature and quality of the Infringing Products WL offers, and Nike's reputation and goodwill will be damaged – and the value of

- 14 -

the Asserted Marks jeopardized – by WL's continued use of the Asserted Marks and/or confusingly similar marks. Because of the likelihood of confusion between WL's Infringing Products and the Asserted Marks, any defects, objections, or faults found with WL's Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks. As such, WL is liable to Nike for infringement of its registered marks under 15 U.S.C. §1114.

69.     As a direct and proximate result of WL's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, WL will continue to use the Asserted Marks and/or confusingly similar marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining WL and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

70.     Nike is further entitled to recover from WL the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of WL's wrongful acts.

71.     WL's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful. WL's bad faith is evidence at least by the similarity of WL's Infringing Products to the Asserted Marks. Because of the willful nature of WL's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

72.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT II: FALSE DESIGNATION OF ORIGIN /
## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C § 1125(A)

73.     Nike repeats and alleges each and every allegation of paragraphs 1 through 72, above, as though fully set forth herein.

- 15 -

FIRST AMENDED COMPLAINT

74.   The Asserted Marks are federally registered and entitled to protection under federal and common law. Nike has extensively and continuously promoted and used the Asserted Marks for many decades in the United States and worldwide. Through that extensive and continuous use, the Asserted Marks have become famous and well-known indicators of the origin and quality of Nike products.

75.   WL's unauthorized use of the Asserted Marks and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of WL and/or WL's Infringing Products by creating the false and misleading impression that WL's Infringing Products are manufactured by, authorized by, or otherwise associated with Nike.

76.   As a direct and proximate result of WL's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, WL will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction precluding WL and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or confusingly similar marks in connection with WL and the promotion, marketing, offer to sell, or sale of any WL's products.

77.   Nike is further entitled to recover from WL the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of WL's wrongful acts.

78.   WL's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful. WL's bad faith is evidence at least by the similarity of WL's Infringing Products to the Asserted Marks. Because of the willful nature of WL's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

79.   Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of

suit and its attorneys' fees because this is an exceptional case.

## COUNT III: TRADEMARK DILUTION
## IN VIOLATION OF 15 U.S.C. § 1125(C)

80.   Nike repeats and alleges each and every allegation of paragraphs 1 through 79, above, as though fully set forth herein.

81.   The Swoosh design mark has become famous throughout the United States as a result of the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Nike's sales and trading areas, their channels of trade, their degree of recognition, and registration of the marks.

82.   The Swoosh design mark became famous before WL used the mark.

83.   Because Nike's products bearing the Swoosh design mark have gained a reputation synonymous with fashion, quality, styling, and authenticity, the Swoosh design mark has gained substantial renown. WL has used and continues to use in commerce the Swoosh design mark or confusingly similar marks in connection with the advertisement, promotion, and sale of WL's Infringing Products.

84.   WL's use of the Swoosh design mark and/or confusingly similar marks has caused, continues to cause, and/or is likely to cause irreparable injury to and dilution of the distinctive quality of the Swoosh design mark in violation of Nike's rights under 15 U.S.C. § 1125(c). WL's wrongful use of the Swoosh design mark is likely to cause dilution by blurring and the whittling away of the distinctiveness and fame of the Swoosh design mark.

85.   As a direct and proximate result of WL's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless restrained, WL will continue to use the Swoosh design mark and/or confusingly similar marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining WL and, as applicable, its

FIRST AMENDED COMPLAINT

officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of dilution.

86.     Nike is further entitled to recover from WL the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of WL's wrongful acts.

87.     WL's use of the Swoosh design mark and/or confusingly similar marks has been intentional and willful. WL's bad faith is evidence at least by the similarity of WL's Infringing Products to the Swoosh design mark. Because of the willful nature of WL's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

88.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT IV: UNFAIR COMPETITION
## UNDER CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

89.     Nike repeats and alleges each and every allegation of paragraphs 1 through 88, above, as though fully set forth herein.

90.     By reason of the foregoing, WL has been, and is, engaged in unlawful, unfair and/or fraudulent business practices in violation of §§ 17200, et seq., of the California Bus. & Prof. Code.

91.     As a direct and proximate result of WL's unauthorized use of the Asserted Marks and/or confusingly similar marks Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, WL will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to: (a) an injunction restraining WL and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or confusingly similar marks in connection with WL and the promotion, marketing, offer to sell, or sale of any of WL's products; and (b) restitution of WL's

- 18 -

profits earned from their unauthorized use of the Asserted Marks and/or any confusingly similar marks in which profits Nike has a vested interest.

## COUNT V: COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

92.   Nike repeats and alleges each and every allegation of paragraphs 1 through 91, above, as though fully set forth herein.

93.   Nike was the first to use the Asserted Marks. As a result of Nike's continuous promotion and sales of products bearing the Asserted Marks for many decades, the Asserted Marks have become widely known, and Nike has been identified in the public mind as the manufacturer of the products to which the Asserted Marks are applied.

94.   As a result of the experience, care, and service of Nike in producing the products to which the Asserted Marks are applied, these products have become widely known and have acquired a worldwide reputation for fashion, quality, styling, and authenticity. Moreover, the Asserted Marks have come to symbolize Nike's reputation for quality and excellence.

95.   WL, with knowledge and intentional disregard of Nike's rights, continues to advertise, promote, and sell products using the Asserted Marks and/or confusingly similar marks. WL's acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of Nike's products.

96.   WL's acts alleged herein and specifically, without limitation, WL's use, manufacture, promotion, offers to sell, and/or selling in the United States numerous products that are confusingly similar to products bearing the Asserted Marks, infringe Nike's exclusive trademark rights in violation of the common law.

97.   As a direct and proximate result of WL's wrongful acts alleged above, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless restrained, WL will continue to use the Asserted Marks and/or confusingly similar

- 19 -

marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining WL and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or any confusingly similar marks in connection with WL and the promotion, marketing, offer to sell, or sale of any WL's products.

98.   WL's use of the Asserted Marks and/or confusingly similar marks has been intentional and willful. WL's bad faith is evidenced at least by the similarity of WL's Infringing Products to the Asserted Marks.

## JURY DEMAND

99.   Pursuant to Federal Rule of Civil Procedure 38(b), Nike hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Nike respectfully prays for:

1.   A judgment and order that WL has willfully (A) infringed the Asserted Marks in violation of 15 U.S.C. §1114, (B) used false designations of origin in violation of 15 U.S.C § 1125(a), (C) diluted at least the Swoosh design mark in violation of 15 U.S.C. § 1125(c), (D) engaged in unlawful, unfair or fraudulent business practices in violation of §§ 17200, et seq., of the California Bus. & Prof. Code; and (E) violated Nike's common law rights in the Asserted Marks.

2.   A judgment and order enjoining WL and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with WL, during the pendency of this action and permanently thereafter from:

        a.   Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under the Asserted Marks or any other marks, names, symbols, or logos which are likely to cause confusion or to cause mistake or to

- 20 -

FIRST AMENDED COMPLAINT

deceive persons into the erroneous belief that any products that WL caused to enter the stream of commerce or any of WL's commercial activities are sponsored or licensed by Nike, are authorized by Nike, or are connected or affiliated in some way with Nike or the Asserted Marks;

b.    Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under the Asserted Marks and/or confusingly similar marks;

c.    Implying Nike's approval, endorsement, or sponsorship of, or affiliation or connection with, WL's products, services, or commercial activities, passing off WL's business as that of Nike, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Nike and from otherwise interfering with or injuring the Asserted Marks or the goodwill associated therewith;

d.    Engaging in any act which is likely to dilute the distinctive quality of the Swoosh design mark and/or injures Nike's business reputation;

e.    Representing or implying that WL is in any way sponsored by, affiliated with, or licensed by Nike; or

f.    Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (e) above.

3.    An order that Nike is the exclusive owner of the Asserted Marks and that such marks are valid and protectable;

4.    An order that WL be required to deliver to Nike for destruction any and all shoes, apparel, digital files, packaging, printed graphics, promotional materials,

- 21 -

FIRST AMENDED COMPLAINT

business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of their possession, custody, or control bearing the Asserted Marks and/or confusingly similar marks;

5. An order granting an award of damages suffered by Nike according to proof at the time of trial;

6. An order that WL account to Nike for any and all profits earned as a result of WL's acts in violation of Nike's rights,

7. An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

8. An order granting restitution of WL's profits earned from its unauthorized use of the Asserted Marks and/or confusingly similar marks in which profits Nike has a vested interest, pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

9. An order granting an award of punitive damages for the willful and wanton nature of WL's aforesaid acts under the common law;

10. An order granting pre-judgment interest on any recovery by Nike;

11. An order granting an award of Nike's costs, expenses, and reasonable attorneys' fees; and

12. Granting such other and further relief as is just and proper.

- 22 -

FIRST AMENDED COMPLAINT

1

2      Dated:  October 15, 2020                ARNOLD & PORTER KAYE SCHOLER LLP

3

4                                              By:  /s/ Rhonda R. Trotter

5                                                   Rhonda R. Trotter (SBN 169241)
                                                      Rhonda.Trotter@arnoldporter.com
6                                                   Cassandra E. Havens (SBN 317241)
                                                      Cassandra.Havens@arnoldporter.com
7                                                   ARNOLD & PORTER KAYE SCHOLER LLP
                                                    777 South Figueroa Street, 44th Floor
8                                                   Los Angeles, California 90017-5844
                                                    Telephone: (213) 243-4000
9                                                   Facsimile: (213) 243-4199

10                                                  Christopher J. Renk (*pro hac vice* to be filed)
                                                      Chris.Renk@arnoldporter.com
11                                                  Michael J. Harris (*pro hac vice* to be filed)
                                                      Michael.Harris@arnoldporter.com
12                                                  ARNOLD & PORTER KAYE SCHOLER LLP
                                                    70 West Madison Street, Suite 4200
13                                                  Chicago, Illinois 60602-4231
                                                    Telephone: (312) 583-2300
14                                                  Facsimile: (312) 583-2360

15                                                  Edmond Ahadome* (SBN 317311)
                                                      Edmond.Ahadome@arnoldporter.com
16                                                  ARNOLD & PORTER KAYE SCHOLER LLP
                                                    601 Massachusetts Ave, NW
17                                                  Washington, DC 20001-3743
                                                    Telephone: (202) 942-5000
18                                                  Facsimile: (202) 942-5999
                                                    *Admitted in CA and MN only; practice
19                                                  limited to matters before federal courts and
                                                    federal agencies

20                                                  Neda Dadpey (*pro hac vice* to be filed)
                                                      Neda.Dadpey@arnoldporter.com
21                                                  ARNOLD & PORTER KAYE SCHOLER LLP
                                                    250 West 55th Street
22                                                  New York, New York 10019-9710
                                                    Telephone: (212) 836-8000
23                                                  Facsimile: (212) 836-8689

24                                                  *Attorneys for Plaintiff Nike, Inc.*

25

26

27

28

                                              - 23 -