UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKE, INC.<br><br>Plaintiff,<br><br>v.<br><br>WARREN LOTAS, et al.,<br><br>Defendant. | Case No. 2:20−cv−09431−MCS−PVC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF NIKE INC.'S MOTION FOR A PRELIMINARY INJUNCTION** |

This case stems from Plaintiff Nike, Inc.'s ("Nike") claims that Defendants Warren Lotas and Warren Lotas, LLC ("Warren Lotas") have violated federal trademark laws, federal anti-dilution laws, and unfair competition laws. FAC. ¶ 11. Nike filed a Motion for a Preliminary Injunction with three supporting declarations. ("Mot. for Prelim. Inj.," ECF No. 19-1; "Pallett Decl.," ECF No. 19-2; "Sherman Decl.," ECF No. 19-3; "Dadpey Decl. ISO Mot. for Prelim. Inj.," ECF No. 19-4). Warren Lotas filed an Opposition with one supporting declaration. ("Opp'n," ECF No. 35; "Lotas Decl.," ECF No. 35-1). Nike then filed a Reply with one supporting declaration. ("Reply," ECF No. 37; "Dadpey Decl. ISO Reply," ECF No. 37-1). Warren Lotas also filed an Objection to portions of the Dadpey Decl. ISO Reply. ("Lotas Obj.

to Dadpey Decl. ISO Reply," ECF No. 38).[1] Oral argument took place on November 16, 2020. For the following reasons, a modified version of Nike's proposed preliminary injunction is **GRANTED**.

## I. BACKGROUND

Nike is a popular brand that markets and sells many products, including footwear. Nike's iconic logo is the Swoosh design, which is trademarked. Pallett Decl. ¶¶ 10, 17. One of Nike's most popular sneakers is the Dunk sneaker ("Dunk"). Sherman Decl. ¶¶ 3-7. Nike has trademarked the trade dress for the Dunk. Pallett Decl. ¶ 19.

"On August 3, 2020, [Warren Lotas] posted on Instagram a picture of its Warren Lotas Freddy Broccolini Chanclas sneaker" ("WL Broccolini") and began taking preorders that would be fulfilled in December 2020. Dadpey Decl. ISO Mot. for Prelim. Inj. ¶ 3, 4. On September 27, 2020, Warren Lotas posted on Instagram a picture of the Warren Lotas X Staple Pigeon OG ("WL Pigeon") and also said the sneaker could be preordered. *Id*. at ¶ 5. Nike then filed a Complaint on October 14, 2020 and a First Amended Complaint ("FAC") on October 15, 2020. *See* Compl.; *see also* FAC. The FAC alleges that Warren Lotas' Broccolini and Pigeon sneakers violate federal trademark infringement and anti-dilution laws as well as the statutory and common law of unfair competition. FAC ¶ 11. On October 16, 2020, Warren Lotas posted on Instagram an intent to fulfill the preorders of its sneakers. Dadpey Decl. ISO Prelim. Inj. ¶ 7.

However, once served with Nike's FAC and Motion for a Preliminary Injunction, Warren Lotas "advised Nike that we would not fulfill preorders or promote or take new orders for the" WL Broccolini or the WL Pigeon "while the parties worked together to

---

[1] For purposes of evaluating whether a preliminary injunction should be granted, "the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc*., 736 F.3d 1239, 1250 n. 5 (9th Cir. 2013). Warren Lotas' objections are **OVERRULED**.

reach a global resolution to the lawsuit." Lotas Decl. ¶ 4. Warren Lotas alleges it told Nike that the "X Staple Pigeon OG has never been manufactured and although the Freddy Broccolini Chanclas have been manufactured . . . we would not fulfill those orders and would agree to destroy our inventory." *Id.* at ¶ 5. On October 29, 2020, Warren Lotas emailed "every customer that had preordered the" WL Broccolini or the WL Pigeon and told them that the sneakers "were not a collaboration with Nike and that the preorders would not be fulfilled." *Id.* at ¶ 6. Customers were then offered a refund or the option to use the credit toward a preorder of a different sneaker. *Id.* That same day, Warren Lotas posted all of this information on Instagram. *Id.* at ¶ 7. Warren Lotas alleges it has processed refunds for customers who requested a refund and has asked the manufacturer of the WL Broccolini to destroy those sneakers. *Id.* at ¶ 9, 10. Warren Lotas has also stated it will not "offer for sale, sell, advertise, or promote" the WL Pigeon, the WL Broccolini, or any colorable imitations of those sneakers. *Id.* at ¶ 11.

The sneaker Warren Lotas is offering to customers who want a replacement sneaker instead of a full refund is called the WL Reaper ("Reaper"). *See Id.* at Ex. A. Nike argues in its Reply that the Reaper still infringes the Dunk trade dress. *See* Reply 2-5. As evidence, Nike set forth examples of reactions by viewers on Instagram who still see similarities between the Reaper and the Dunk and online articles that comment on the Reaper's similarity to the Dunk. Dadpey Decl. ISO Reply ¶ 6-10.

**II. LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). The Ninth Circuit balances these factors using a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## III. DISCUSSION

Nike argues it is entitled to a preliminary injunction because: (1) Nike is likely to succeed on the merits of its trademark infringement claims, dilution claims, and related claims, (2) Nike is likely to suffer irreparable harm due to customer confusion and loss of reputation and goodwill, (3) the balance of equities weighs in Nike's favor, and (4) the injunction is in the public interest because it protects the public from being deceived or confused. In opposition, Warren Lotas argues that a preliminary injunction should not be granted because Warren Lotas' actions already complied with the terms of the preliminary injunction. Nike disagrees with Warren Lotas and argues that a preliminary injunction is still necessary because the WL Pigeon and WL Broccolini are still featured on Warren Lotas' Instagram page[2] and Warren Lotas' replacement sneaker, the Reaper, infringes on the Dunk trade dress.[3] These actions, according to Nike, show Warren Lotas has not ceased the allegedly infringing conduct and may continue the allegedly infringing conduct in the future.

Given this background, the Court will consider whether a preliminary injunction should be granted.

A. <u>Warren Lotas X Staple Pigeon OG and Warren Lotas Freddy Broccolini Chanclas</u>

    i. Likelihood of Success on the Merits

"To establish infringement of a registered trademark, the trademark holder must show that it is (1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (citing 15 U.S.C. § 1114(1) and *Brookfield Commc'ns,*

---

[2] During oral argument, Warren Lotas confirmed that the Instagram posts are now removed from Warren Lotas' Instagram account.

[3] The issue of whether there is a likelihood of success on the merits that the WL Reaper infringes on the Dunk trade dress has not been fully briefed and analysis is not necessary for the purposes of this preliminary injunction.

4

*Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1046 (9th Cir.1999)).

As to the first prong of a trademark infringement claim, Nike's certificate of registration for the Swoosh design mark serves as "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b).[4]

The second prong of a trademark infringement claim requires showing "the alleged infringer is using a confusingly similar mark." *Grocery Outlet Inc*, 497 F.3d at 951 (citing 15 U.S.C. § 1114(1) and *Brookfield Commc'ns, Inc.,* 174 F.3d at 1046). The Ninth Circuit has applied the following factors, known as the *Sleekcraft* factors, in determining whether confusion between related goods can be established: "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). "The *Sleekcraft* factors are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts. Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011). The Court will now turn to an analysis of these factors.

(a) Strength of the Mark

"The strength of a mark is determined by the mark's conceptual distinctiveness and its commercial strength." *JOL Mgmt. Co. v. Polycell Nutraceuticals, Inc.*, No. CV 08-198 ABC (FFMX), 2008 WL 11334472, at *2 (C.D. Cal. Aug. 18, 2008) (citing *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1206 (9th Cir. 2000)). The Nike

---

[4] While Nike alleges that the WL Pigeon and WL Broccolini infringe on both the Nike Swoosh design mark and Dunk trade dress (Mot. for Prelim. Inj. 12), this Court finds that it is sufficient to only analyze whether these two shoes infringe on the Nike Swoosh design mark.

Swoosh design mark is a strong and recognizable mark. *See* Pallett Decl. Third parties have acknowledged its strength and "billions of products" bearing the Nike Swoosh design mark have been sold. *Id.* at ¶¶ 12, 15. Warren Lotas does not dispute the strength of Nike's Swoosh design mark. This factor weighs in favor of finding a likelihood of confusion.

(b) Proximity of the Goods

"Goods are proximate if consumers are 'likely to associate' the two product lines." *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1173 (C.D. Cal. 2017) (citing *Surfvivor Media, Inc. v. Survivors Prods.*, 406 F.3d 625, 633 (9th Cir. 2005)). Here, given that both products are sneakers, and comments on Instagram already show potential consumer confusion in believing the WL Pigeon and WL Broccolini are affiliated with Nike, this factors weighs in favor of finding a likelihood of confusion.

(c) Similarity of the Marks

"Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft Boats*, 599 F.2d at 351. Here, sight is the most relevant factor. The Nike Swoosh design mark and the mark on the side of the WL Pigeon and WL Broccolini are strikingly similar. The minimal markings inside of the shape on the WL Pigeon and WL Broccolini are not enough to create a meaningful distinction between the marks. This factor weighs in favor of finding a likelihood of confusion.

(d) Evidence of Actual Confusion

Nike's assertion of evidence of actual confusion strongly supports its ability to show there is a likelihood of confusion. *See Playboy Enter.'s, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004) (". . . a showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion.") Public comments made on Warren Lotas' Instagram posts of the WL Pigeon and WL Broccolini express this confusion. Dadpey Decl. ISO Mot. for Prelim. Inj. ¶ 6-9. Commenters have stated that they thought Warren Lotas had permission to use Nike trademarks, Warren Lotas was collaborating with Nike, and that

the WL Pigeon and WL Broccolini were Nike Dunks. *Id*. This factor weighs in favor of finding a likelihood of confusion.

### (e) Marketing Channels

Products with the Nike Swoosh design mark are sold "through Nike-owned retail stores and digital platforms, and to retail accounts and a mix of independent distributors, licensees and sales representatives." Pallett Decl. ¶ 6. Warren Lotas uses online marketing for the WL Pigeon and WL Broccolini. Dadpey Decl. ISO Mot. for Prelim. Inj. ¶ 3-5. "The fact that both parties sell products online adds little weight in the overall likelihood of confusion analysis." *Moroccanoil, Inc.*, 230 F. Supp. 3d at 1176. While the Dunks, WL Pigeon, and WL Broccolini are all sold online, the use of online marketing channels "adds little weight" here. Pallett Decl. ¶ 6; Dadpey Decl. ISO Mot. for Prelim. Inj. ¶ 4-6; *Moroccanoil, Inc.*, 230 F. Supp. 3d at 1176. This factor is neutral and does not weigh in favor of either party.

### (f) Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser

Different standards of care may be applied depending on the behaviors of the average buyer for a product. *See Sleekcraft Boats*, 599 F.2d at 353. Neither party has provided sufficient evidence on the record to evaluate this factor, and as such, this factor does not weigh in favor of either party.

### (g) Defendants' Intent in Selecting the Mark

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Id*. at 354. Warren Lotas seemingly admitted they intentionally selected marks similar to the Nike Swoosh design mark, as Warren Lotas stated in an email to customers that "[w]e intended for these sneakers, which were not a collaboration with Nike, to pay homage to a streetwear classic and its impact on the world." Lotas Decl. Ex. A at 5, 6. This factor weighs in favor of finding a likelihood of confusion.

(h) Likelihood of Expansion of the Product Lines

"[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft Boats*, 599 F.2d at 353. The parties did not provide sufficient evidence regarding this factor and as such, it does not favor either party.

Based on the *Sleekcraft* factors above, Nike has established a likelihood of confusion between the Nike Swoosh design mark, the WL Pigeon, and the WL Broccolini.

Warren Lotas' plan now is *not* to sell the WL Pigeon and WL Broccolini, but to either refund customers who made preorders or provide a different shoe called the WL Reaper ("Reaper"). Lotas Decl. ¶ 11. Customers who opt to receive the Reaper also receive "a commemorative lawsuit shirt, pencil and bumper sticker." *Id*. at Ex. A at 6. The "WL Reaper Chainsaw" will only be offered to customers who preordered the WL Pigeon or WL Broccolini. Dadpey Decl. ISO Reply ¶ 3. It is unclear whether the "WL Reaper Clean Slate" or "WL Reaper Electric Blue" will also only be available to customers who placed preorders on the two other Warren Lotas sneakers or if they will be available to the public. By taking this course of action, Warren Lotas is likely to engage in initial interest confusion.[5]

"Initial interest confusion occurs when the defendant uses the plaintiff's trademark 'in a manner calculated "to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion"' and is actionable infringement. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002) (quoting *Brookfield Commc'ns, Inc.*, 174 F.3d at 1062). The Ninth Circuit in *Brookfield Commc'ns, Inc.* provided a helpful analogy for how initial interest confusion operates. 174 F.3d at 1064. There, the Court analyzed whether the use of a trademark

---

[5] The Court will not review the *Sleekcraft* factors again for purposes of analyzing initial customer confusion, as the analysis in Section (III)(3)(A)(i)(a)-(h) applies in this situation, too.

in a metatag caused initial interest confusion. *See Id.* at 1044, 45 (explaining that "[m]etatags are HTML code intended to describe the contents of the web site" and that when a person on the internet searches for a term that happens to be in a website's metatag and text, the person is more likely to find the website due to the frequency of the term's use in the website metatags and website text). There, the Court analogized the use of another's trademark in metatags to putting up a billboard with a competitor's trademark directing potential customers to a store. *Id.* at 1064. The trademark on the billboard leads the potential customer to believe they are heading to a store commonly associated with that trademark. *Id.* However, upon arrival, potential customers find the competitor's store, not the store commonly associated with the trademark on the billboard. *Id.* Even though the potential customer is now aware that the store they are at is not related to the trademark that originally encouraged them to seek out the store, the customer may still spend money at the store. *Id.* The Ninth Circuit found that the metatags were akin to the billboard and created initial interest confusion. *Id.* at 1064, 1066.

The analogy applies here, too. Warren Lotas took preorders for the WL Pigeon and Broccolini, both of which contain a similar design to the Nike Swoosh design mark, and then offered a refund *or a different shoe*. *See* Lotas Decl. The "billboard" in this instance is the Warren WL Pigeon and WL Broccolini, both of which likely infringe on the Nike Swoosh design mark. Warren Lotas plans on benefitting from this initial interest in the WL Pigeon and WL Broccolini by now offering the Reaper to customers who preordered the WL Pigeon or WL Broccolini. *See* Dadpey Decl. ISO Reply ¶¶ 3-5. It is irrelevant that Warren Lotas has informed these customers that the Reaper is not affiliated with Nike, because the initial interest confusion attached prior to that disclaimer. *See Brookfield Commc'ns, Inc.*, 174 F.3d at 1064 ("the fact that there is only initial consumer confusion does not alter the fact that [defendant] would be misappropriating [plaintiff's] acquired goodwill"). The fact that preorders have been taken, but no sneakers have been distributed, is also irrelevant *See Dr. Seuss Enter.'s,*

9

*L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997) (stating that a book that used a similar title and artwork as a Dr. Seuss book "to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may still be an infringement"). Warren Lotas is benefitting from the Nike Swoosh design mark by now intending to fulfill preorders that may have been obtained through initial interest confusion.

Based on the analysis above, Nike is likely to succeed on the merits of trademark infringement as it applies to the WL Pigeon and WL Broccolini.

### ii. Irreparable Harm

Nike argues that, without a preliminary injunction, Nike will experience irreparable harm to its "reputation and goodwill." *See* Mot. for Prelim. Inj. 15-19; *see also Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, F. App'x 469, 473, 474 (9th Cir. Feb. 4 2015). It is Nike's burden to provide evidence it is likely to suffer irreparable harm absent a preliminary injunction. *Herb Reed Enter.'s, LLC*, 736 F.3d at 1249. Consumer confusion can serve as the basis for finding irreparable harm to "reputation and goodwill." *Life Alert Emergency Response, Inc.*, F. App'x at 473, 474 (finding that complaints from potential customers, including complaints received from emails and social media posts, "substantiates the threat to Life Alert's reputation and goodwill"). Nike's submission of online comments from the public detailing confusion about whether the WL Pigeon and WL Broccolini are affiliated with Nike shows confusion amongst potential customers. Dadpey Decl. ISO Mot. for Prelim. Inj. ¶ 6, 9. There is also evidence in the record of a consumer who purchased the WL Pigeon and is "attempting to resell them on ebay" with the brand being listed as "Nike" and the product being listed as "SB, Nike SB, Nike Dunk." *Id.* at ¶ 10. Nike's evidence of actual confusion shows that there is a likelihood of irreparable harm to its brand reputation and goodwill.

///
///

### iii. Balance of Equities

When deciding whether to grant a preliminary injunction, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542, 107 S. Ct. 1396, 1402, 94 L. Ed. 2d 542 (1987); *Moroccanoil, Inc.*, 230 F. Supp. 3d at 1178.

Warren Lotas has already informed Nike that it will not fulfill preorders or solicit new orders of the WL Pigeon and WL Broccolini. Lotas Decl. ¶ 4. The WL Pigeon "has never been manufactured" and Warren Lotas told Nike it would destroy the inventory of WL Broccolini sneakers. *Id*. at ¶ 5. The WL Pigeon and WL Broccolini were also only announced as available for preorder in the last few months. Dadpey Decl. ISO Mot. for Prelim. Inj. ¶¶ 3-5. However, Nike has "consistently and continuously" used the Swoosh design mark since 1971, "has sold billions of products bearing the Swoosh design in the United States," and "maintains strict quality control standards for products bearing its trademarks." Pallett Decl. ¶ 11, 12, 21. Based on these facts, the balance of equities is in Nike's favor.

### iv. Public Interest

"The public interest favors a preliminary injunction where, as here, the plaintiff has shown a likelihood of confusion." *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1183 (C.D. Cal. 2010). The above analysis shows there is a likelihood of confusion and as such, there is a public interest in entering a preliminary injunction against Warren Lotas so as to prevent any confusion.

Based on the analysis above, Nike has made a sufficient showing that a preliminary injunction should be granted.

### B. Voluntary Cessation

Rather than dispute the merits of Nike's Motion for a Preliminary Injunction, Warren Lotas instead argues the need for a preliminary injunction has been mooted. Specifically, Warren Lotas says it "has gone further" than the preliminary injunction by

agreeing to the following: never fulfilling preorders of the WL Pigeon, WL Broccolini, or colorable imitations of the sneakers; never promoting or advertising the WL Pigeon, WL Broccolini, or colorable imitations of the sneakers; providing refunds; and providing a declaration with its Opposition showing compliance with the terms of the proposed preliminary injunction. Opp'n 4, 5. The Court disagrees with Warren Lotas' assertion that the need for a preliminary injunction has been mooted.

In *Cherokee, Inc. v. Wilson Sporting Goods, Co.*, the Defendants argued that they ceased use of a certain term on their volleyballs and mooted the need for a preliminary injunction. No. CV–04023 BRO (Ex), 2015 WL 3930041, at *3 (C.D. Cal. June 25, 2015). The Defendants submitted a declaration from one of the Defendants' employees stating that the design of the volleyball had been changed so as to remove the disputed term and "that it is no longer manufacturing or selling volleyballs with the term." *Id*. This was not enough to moot the need for a preliminary injunction because the declaration submitted did not "state[] unequivocally that Defendant" would not resume the manufacturing of the allegedly infringing volleyballs "should the Court deny Plaintiff an injunction." *Id*. at *4.

Here, Warren Lotas argues that the need for a preliminary injunction has been mooted by certain actions that are discussed above. Lotas Decl. ¶¶ 6, 7, 9-11. While these steps seem promising, other actions show Warren Lotas has not "unequivocally" ceased its plans to benefit from the likely infringing conduct. Warren Lotas still has the potential to profit off of the likely infringing conduct by seeking to fulfill preorders originally for the WL Pigeon and WL Broccolini with the Reaper as well as a "commemorative lawsuit shirt, pencil and bumper sticker." Lotas Decl. Ex. A at 6. Essentially, Warren Lotas garnered interest in shoes found to likely infringe a Nike trademark and still intends to profit off of that action by fulfilling those preorders with the Reaper. *See* Lotas Decl. Ex. A. Based on the record before this Court, Warren Lotas has not stopped engaging in the conduct that a preliminary injunction would prohibit.

///

The Court rejects Warren Lotas' argument that the need for a preliminary injunction has been mooted.

## IV. SCOPE OF THE INJUNCTION

"In considering a request for a preliminary injunction, a court must remain mindful that such relief is aimed primarily at preserving the status quo pending trial." *Cherokee Inc.*, 2015 WL 3930041, at *3. The Court can change the scope of the injunction if it finds it necessary to do so. *Toyo Tire USA Corp. v. Mandala*, No. 8:20-cv-00502-JLS-KES, 2020 WL 5371513, at *9 (C.D. Cal. Aug. 4, 2020). The Court denies the portion of the preliminary injunction that requires Warren Lotas to escrow funds received through preorders so that Warren Lotas can refund those customers. The potential for initial interest confusion also causes the Court to modify the preliminary injunction to ensure Warren Lotas is enjoined from using the WL Pigeon or WL Broccolini to gain initial interest in other Warren Lotas products.

## V. BOND

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citations omitted) (emphasis in original).

If the Court's preliminary injunction is ultimately found to be improvident, Warren Lotas may likely suffer damages arising from the Court's restrictions during the pendency of the preliminary injunction. Nike requests that, if any bond be set, it be set at $10,000. Mot. for Prelim. Inj. 20, 21. Warren Lotas does not make any arguments regarding an appropriate bond. *See* Opp'n. Accordingly, the Court will set the bond amount at $10,000.

///

13

## VI. CONCLUSION

For the foregoing reasons, Nike's Motion for a Preliminary Injunction is **GRANTED in part** and **DENIED in part**.

It is **ORDERED** that:

(1) During the pendency of this action, Warren Lotas and its officers, agents, employees, attorneys, and all persons who are in active concert or participation with Warren Lotas are prohibited from fulfilling all preorders taken to date for the Warren Lotas X Staple Pigeon OG, Warren Lotas Freddy Broccolini Chanclas, and/or any colorable imitations of those sneakers;

(2) During the pendency of this action, Warren Lotas and its officers, agents, employees, attorneys, and all persons who are in active concert or participation with Warren Lotas are prohibited from promoting, offering to sell, selling, and/or taking additional preorders for the Warren Lotas X Staple Pigeon OG, Warren Lotas Freddy Broccolini Chanclas, and/or any colorable imitations of those sneakers;

(3) During the pendency of this action, Warren Lotas and its officers, agents, employees, attorneys, and all persons who are in active concert or participation with Warren Lotas are prohibited from promoting, offering to sell, selling, or using in any other way the Warren Lotas X Staple Pigeon OG, Warren Lotas Freddy Broccolini Chanclas, and/or any colorable imitations of those sneakers to induce sales for other Warren Lotas products, including, but not limited to, versions of the Warren Lotas Reaper;

(4) Warren Lotas must file with the Court within thirty days after entry of this Order a report in writing under oath setting forth in detail the manner and form in which Warren Lotas has complied with the injunction.

/ / /

/ / /

This Preliminary Injunction is effective on Plaintiffs providing security in the amount of $10,000 under Federal Rule of Civil Procedure 65(c).

**IT IS SO ORDERED.**

Dated: November 18, 2020

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE